UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
EDWARD BRIDGES,

                     Petitioner,

    -against-

LIA VALLEY,

                     Respondent.
------------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

10 Civ. 5950 (BMC)

**COGAN**, District Judge.

    Petitioner, having had a fight with his first victim two weeks earlier, approached the victim on the street and fatally shot him in the head from two feet away. He continued firing multiple shots and also killed a woman who was with the first victim. He was convicted in state court of intentional murder in the second degree with respect to the first victim, and depraved indifference murder in the second degree with respect to the second. The trial court sentenced him to twenty-five years to life for each murder, to run consecutively.

    In his petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254(d), petitioner timely raises seven exhausted points of error: (1) two confessions he gave should have been suppressed for lack of Miranda warnings; (2) the evidence was legally insufficient to support his depraved indifference murder conviction; (3) the trial court did not instruct the jury that depraved indifference was a mental state that had to be proven beyond a reasonable doubt; (4) the sentencing judge violated Apprendi in deciding that the sentences imposed would run concurrently, not consecutively; (5) witness identifications of him should have been suppressed; (6) his trial counsel was ineffective for omitting to make certain motions and raise certain

objections; and (7) the trial court failed to administer required oaths to the jury. Points two and three are procedurally barred, and the Appellate Division's rejection of points one, four, and five through seven was not an unreasonable application or contrary to Supreme Court precedent. Accordingly, his petition is denied.

Additional facts will be set forth below as necessary to address each of petitioner's points of error.

## I.   Admission of Petitioner's Confessions (Ground One of Petition)

Upon his arrest, at 9:45 p.m. on June 24, petitioner was read his <u>Miranda</u> rights and signed a written advice and waiver. After just over two hours of questioning, he made an exculpatory statement at 11:45 p.m., admitting that he was in the area of the shooting at the time but denying any knowledge of it. He remained in custody overnight. The next day, at noon, he was questioned again, without additional <u>Miranda</u> warnings, and essentially gave the same statement.

Just over three hours later, at 3:25 p.m., he was interrogated again; the detectives, who had his signed <u>Miranda</u> waiver form from the previous night, did not re-administer the warnings. Petitioner then broke down and admitted that he was the shooter. The detectives wrote down petitioner's statement, and he signed it. At 8:25 p.m., an Assistant District Attorney interviewed petitioner on videotape. Petitioner acknowledged that he had received and waived his <u>Miranda</u> rights the preceding evening, and the ADA again advised him of those rights and petitioner again agreed to waive them. He then repeated his confession.

Petitioner contended on appeal that the police had the obligation to re-administer his <u>Miranda</u> warnings prior to his confession because eighteen hours had passed between the time of

his waiver and his confession. Petitioner further argued that since the ADA's videotape was tainted by his confession, both should have been suppressed. The Appellate Division rejected his claim on the merits, holding that the police, having obtained a valid waiver, were not obligated to re-administer Miranda warnings. People v. Bridges, 63 A.D.3d 752, 880 N.Y.S.2d 341(2d Dep't), leave to app. den., 13 N.Y.3d 794, 887 N.Y.S.2d 544 (2009). Because the state court adjudicated this claim on the merits, I cannot grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. See 28 U.S.C. 2254(d); Williams v. Taylor, 529 U.S. 362, 405 (2000).

The controlling Supreme Court authority is Wyrick v. Fields, 459 U.S. 42, 47 (1982). There, the Court rejected the contention that the mere passage of time could require the re-administration of Miranda warnings. Rather, the Court held that renewed warnings were not required "unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." Id. at 47 (citation omitted). To make that determination, the Court required a review of "the totality of the circumstances" to determine if the confession was voluntary. Id.

Courts within this Circuit have accordingly refused to suppress confessions simply because of the time period that elapsed between the initial and subsequent interrogations. See, e.g., U.S. v. Davis, No. 06 Cr. 911, 2009 WL 637164, at *12 (S.D.N.Y. Mar. 11, 2009) (resumption of interrogation after overnight custody did not require renewed Miranda warnings); Tobias v. Portuondo, 367 F. Supp. 2d 384 (W.D.N.Y. 2004) (same); James v. Ricks, No. 01 CV 4106, 2003 WL 21142989 (E.D.N.Y. Mar. 6, 2003) (no renewal of Miranda warning required when all that had changed between initial reading of warning and confession was passage of

twelve hours). Indeed, the facts of this case are strikingly similar to Hotchkiss v. Walsh, No. 00 Civ. 5518, 2004 WL 2721943 (S.D.N.Y. Nov. 29, 2004), where the defendant was mirandized and waived his right to remain silent at 11:55 p.m., made an exculpatory statement, and then confessed around 5:40 p.m. the next day without re-administration; the court refused to find that new warnings were constitutionally required. As the Second Circuit has held, "[i]t is well established that once an arrested person has received a proper Miranda warning, the fact that questioning is stopped and then later resumed does not necessarily give rise to the need for a new warning." United States v. Banner, 356 F.3d 478, 480 (2d Cir. 2004), judgment vacated on other grounds sub nom. Forbes v. U.S., 543 U.S. 1100, 125 S. Ct. 1010 (2005).

In the instant case, petitioner's arguments before the Appellate Division relied solely on the passage of time between his waiver and his confession. The record contains no other facts upon which he could have relied. While in custody, he was fed or offered food several times, he slept overnight, and there is no evidence that he was denied the use of a bathroom or subjected to coercive measures. His location did not change; he remained at the police precinct, either in a holding cell or interview room, throughout. Moreover, when he gave his videotaped confession, he acknowledged that he had previously been given and waived his rights, thus foreclosing any possible claim that he had forgotten them. Finally, as the hearing court noted, petitioner was "not a novice to the criminal justice system," further suggesting that he knew and voluntarily waived his rights.

Considering the totality of the circumstances, the Appellate Division's decision to sustain admission of the confessions was not contrary to or an unreasonable application of Wyrick.

4

## II.     Admission of Identification Testimony (Ground Six of Petition)

There was an eyewitness to the shooting who knew petitioner from around the neighborhood and the street on which he lived. The eyewitness was interviewed by the police shortly after the shooting, and the police thereafter came to his home with a computer-generated black and white photo array showing six pictures, one of which was of petitioner. The eyewitness told the police that the bottom row of the array (which contained petitioner's picture) was too dark to see and that the shooter could be any one of the three pictures in that row; he asked to see it in color. He went down to the precinct the next day and viewed the color array on a computer screen, at which time he identified petitioner. The array was then printed out in black and white and the eyewitness signed his name under petitioner's picture. The eyewitness then observed a lineup containing petitioner and picked petitioner out of the lineup.

By the time of the pretrial suppression hearing, the original black and white array with the too-dark bottom row had been lost. The prosecutor introduced into evidence at the hearing the array signed by the eyewitness (or a copy of it), a newly generated color printout of that array, and another black and white printout of it created on the day of the suppression hearing, together with testimony explaining the sequence of events described above.

The suppression court held that the eyewitness would be permitted to identify petitioner at trial, rejecting petitioner's argument that the lineup was rendered unduly suggestive by the loss of the original photo array which the eyewitness had found too dark. The Appellate Division affirmed that decision on the merits. It noted the New York rule holding that the failure to preserve the original printout gave rise to a rebuttable presumption of suggestiveness, but held that the prosecutor had presented evidence sufficient to overcome that presumption because

5

"each computer printout of the photographic array in question was virtually identical." Bridges, 63 A.D.3d at 753, 880 N.Y.S.2d at 341.

I can find no Supreme Court authority which the Appellate Division unreasonably applied or to which the Appellate Division's holding was contrary. Notably, petitioner has cited no federal authority of any kind in support of his argument and cited none in the Appellate Division, relying instead on the New York presumption. But that presumption itself is not required by federal law, see Sales v. Harris, 675 F.2d 532, 538 n. 3 (2d Cir. 1982); United States v. Williams, 575 F.2d 388, 393 (2d Cir. 1978) (while better practice is to preserve photographic spreads, identification testimony nonetheless admissible where amply corroborated by proof), so it seems unlikely that violation of this New York rule could amount to a due process violation.

Nevertheless, even if I accept petitioner's argument as an exhausted federal due process claim, it is significant that no analogous Supreme Court authority exists. Of course, the Supreme Court has held that "suggestive confrontations are disapproved . . .", Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375 (1972), and that the admission of identification evidence violates the Due Process Clause of the Fourteenth Amendment if "under all the circumstances of [the] case, there is a very substantial likelihood of irreparable misidentification," Manson v. Brathwaite, 432 U.S. 98, 116 (1977) (internal quotation marks and citation omitted), but none of the factors set forth in these cases that might warrant a finding of suggestiveness or misidentification appear on this record. To the contrary, the eyewitness' prior familiarity with petitioner, his observation of the shooting, the identity of the subsequent photo arrays, the fact that the eyewitness did not identify petitioner from the lost photo array, and the factual findings of the suppression court that the "fillers" in both the photo arrays and the lineup were reasonably similar to petitioner belie any

argument of suggestiveness, at least to the extent of my narrow standard of review of the Appellate Division's decision, and indeed even under a de novo review standard.

## III. The Depraved Indifference Conviction (Grounds Two, Three, and Five of Petition)

In the Appellate Division, petitioner contended that the evidence showed that he deliberately executed both victims, and thus could not be guilty of "depraved indifference" murder as to the second victim. He thereby sought to fall within the line of cases culminating in People v. Feingold, 7 N.Y.3d 288, 294, 852 N.E.2d 1163, 819 N.Y.S.2d 691 (2006), which held that depraved indifference murder was not the proper charge for a one-on-one shooting. However, he effectively acknowledged to the Appellate Division that this was not a position that petitioner's trial counsel had taken at trial in seeking to dismiss the indictment.[1] In fact, trial counsel had taken the opposite position at the close of the prosecutor's case, seeking to dismiss the murder-by-execution charges against petitioner on the ground that he did not intend to kill the second victim:

> To make out a prima facie showing of murder in the first degree on that count, the People would have had to have put forth evidence that my client intended to either cause death or serious physical injury to Tina Harris [the second victim]. I believe there is not evidence in the record, Your Honor, that demonstrates my client had that intent. That he had the intent to cause physical injury or death to Tina Harris. For that matter I would move specifically on that same ground to dismiss the first count of murder in the second degree, the intentional count, as to Tina Harris.[2]

Because trial counsel had failed to assert petitioner's contrary argument on appeal – that the evidence only could have shown intentional murder – in the trial court, the Appellate Division held that argument "unpreserved for appellate review" and "decline[d] to review it in

---

[1] Although petitioner's counsel did not expressly concede that the claim was unpreserved, he asked the Appellate Division to review it under its "interests of justice" jurisdiction, which was essentially an acknowledgement that the claim was unpreserved or otherwise not appealable as of right.

[2] Petitioner had been charged with first degree murder and intentional second degree murder as to both victims.

7

the exercise of our interest of justice jurisdiction." Bridges, 63 A.D.3d at 753, 880 N.Y.S.2d at 341. The Appellate Division's invocation of a procedural bar – where petitioner not only failed to raise the argument he made before it, but actually made the opposite argument at trial – is obviously an "adequate and independent state ground" that prohibits federal habeas review of the issue. See generally Harris v. Reed, 489 U.S. 255, 261-62 (1989).

Petitioner asserts that the Appellate Division improperly held that the argument was unpreserved because once the trial court determined to allow both intentional and depraved indifference murder counts to go to the jury, this preserved the objection under New York law. He cites no authority for this conclusion and it is contrary to the basic principle of New York law that trial counsel must specifically assert all grounds of legal insufficiency upon which dismissal is sought. See People v. Hawkins, 11 N.Y.3d 484, 492, 872 N.Y.S.2d 395 (2008).

Ineffective assistance of counsel can constitute cause that will excuse a procedural default. See Murray v. Carrier, 477 U.S. 478, 488-89, 106 S. Ct. 2639 (1986). Petitioner does not argue that his counsel's failure to seek dismissal of the depraved indifference count constitutes cause for the procedural default, resting instead on his assertion, noted above, that the argument was, in fact, preserved, despite trial counsel's failure to assert it, based on the trial court's decision to submit both intentional murder and depraved indifference murder counts to the jury. Petitioner does, however, assert that his counsel was ineffective for not making such a motion, and I will broadly construe his *pro se* petition as implicitly making the link that his counsel's failure to object to the deliberate indifference count constitutes cause to excuse his procedural default.

For reasons discussed more fully below in connection with petitioner's claim of ineffective assistance of trial counsel, petitioner cannot show that his trial counsel was

8

ineffective under the standard required by Strickland v. Washington, 466 U.S. 668, 690, 104 S. Ct. 2052 (1984). There was ample evidence – the details of petitioner's own statement – upon which a jury could have reasonably concluded that petitioner did not intend to kill the second victim, and therefore he acted with depraved indifference in continuing to discharge the gun after he had hit his first, intended victim. Thus, petitioner was not prejudiced by trial counsel's failure to make this motion, because it would not have been granted. This means that the Strickland standard is not satisfied, and there is no cause to excuse petitioner's procedural default.

Finally, although the merits are not before me as a result of petitioner's procedural default, I would note, as petitioner's appellate counsel conceded before the Appellate Division, that this is not the kind of one-on-one attack which Feingold addressed. Rather, this was a one-on-two attack. The question of petitioner's intent with regard to the second victim – whether she was an intended target or just collateral damage from his intended attack on the first victim – distinguishes the case from Feingold. Because of petitioner's attack on the first victim, the evidence of his intent presented a jury question as to either intentional murder or depraved indifference.

## IV. *Apprendi* Violation (Ground Four of Petition)

Petitioner alleges that the fact that he killed his two victims in separate acts was not proved by the state at trial, and therefore, it was error for the sentencing judge to rely on it in deciding that petitioner's sentences would run concurrently. He argues that the decision to sentence him to consecutive sentences was based on a fact that was not submitted to the jury – namely, that he committed two separate acts – in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000). The Appellate Division rejected petitioner's argument on the

9

merits. Therefore, I must apply § 2254 deference to the state court's holding. See Sellan v. Kuhlman, 261 F.3d 303 (2d Cir. 2001).

In Apprendi, the Supreme Court held that any fact other than a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. The Supreme Court has declined to extend the holding of Apprendi to the choice of whether to impose consecutive or concurrent sentences. In Oregon v. Ice, 555 U.S. 160, 129 S. Ct. 711 (2009), the Supreme Court reasoned that because the decision of whether to impose consecutive sentences was historically the province of the judiciary, the concerns discussed in Apprendi of "encroachment here by the judge upon facts historically found by the jury, [or] any threat to the jury's domain as a bulwark at trial between the State and the accused," are not implicated. Id.

There is no constitutional right implicated by a state court's decision to have sentences run consecutively rather than concurrently, so long as the ultimate sentence is within the range prescribed by state law. Here, both sentences are within the range prescribed by state law, a point that petitioner does not challenge. The state court's holding is not contrary to, or an unreasonable application of Ice. Therefore, habeas relief cannot be granted on this point.

## V.    Ineffective Assistance of Counsel Claims (Ground Seven of Petition)

Petitioner claims that he was denied effective assistance of counsel because his trial counsel failed to: (a) object to the use of the photographic array where the original array was not preserved; (b) object to the "admission of statements" at the hearings and at trial; (c) object to the admission of both intentional and depraved indifference counts; and (d) move to reopen his Wade hearing after trial testimony.

The Appellate Division denied petitioner's claims of ineffective assistance on their merits, and therefore, once again, habeas relief is only available if the Appellate Division's decision unreasonably applied or was contrary to Supreme Court authority. The relevant federal law is the standard for ineffective assistance of counsel under Strickland, which requires a showing of "both deficient performance by counsel and prejudice." See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009). None of the state court's adjudications of the specified claims represented an unreasonable application of Strickland.

### A. Failure to Submit a Memorandum of Law Arguing Against Admission of a Copy of the Original Misplaced Black and White Photo Array

First, petitioner argues that trial counsel erred by not submitting, as he told the hearing court that he would, a memorandum on the issue of whether the black and white photographic array, which was a copy and not the original shown to the identification witness, was unduly suggestive. The Appellate Division held not only that petitioner received effective assistance of trial counsel, but also that the People presented sufficient evidence to establish that the computer printouts of arrays used at trial were "virtually identical" to the original photographic array. Because the state court specifically held that the People had submitted sufficient evidence of the adequacy of the photo array used at trial, any memorandum of law that trial counsel might have submitted would not have affected the outcome of the hearing, and as a result, there is no prejudice.

### B. Trial Counsel's Failure to Object to Statements Made at Trial and the Huntley Hearing

Petitioner argues that it was ineffective assistance for his trial counsel (1) not to object to the testimony of Detective Cortes that Detective Porter wrote the petitioner's statement as petitioner spoke, or (2) not to move to reopen the Huntley hearing when Det. Porter, who did not

11

testify at the hearing, was called at trial. First, Det. Cortes could testify to the fact that Det. Porter wrote out petitioner's statement, because Det. Cortes witnessed the event and had firsthand knowledge of it. Second, Det. Porter did not testify to any facts, and petitioner does not allege any, that would have affected the determination of the voluntariness of petitioner's statement, which was the subject of the Huntley hearing. The state court did not err by finding effective assistance of counsel where trial counsel did not make objections or motions for which he had no grounds.

### C.  Trial Counsel's Failure to Object to the Depraved Indifference Count

Petitioner argues that trial counsel was ineffective because he did not object to the charging of both intentional murder and depraved indifference counts, and because he did not point out that the evidence at trial could not support a depraved indifference conviction. Both of these arguments, rejected on their merits by the Appellate Division, depend on the change in law created by People v. Feingold, 7 N.Y.3d 288, 294, 852 N.E.2d 1163, 819 N.Y.S.2d 691 (2006), which held that depraved indifference is a mental state that must be proved, and is inconsistent with the mental state required for proof of intentional murder.

One of the requirements to prevail on an ineffective assistance of counsel claim under Strickland, 466 U.S. at 687, 104 S. Ct. at 2064, is that counsel's performance must have been objectively unreasonable, that is, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." The performance required under the Sixth Amendment requires trial counsel to be familiar with the law as it exists at the time he is trying the case, not to have a crystal ball and predict changes in the law well into the future.

12

Petitioner's judgment of conviction was filed on January 30, 2003. Feingold did not overrule the then-prevailing depraved indifference murder case law until 2006. A trial lawyer might well have displayed unusual foresight in anticipating Feingold years before it was decided – and, indeed, as People v. Jean-Baptiste, 11 N.Y.3d 539, 544, 872 N.Y.S.2d 701 (2008), shows, at least one did – but unusual foresight is not the floor for constitutionally effective counsel, as that would be inconsistent with objective reasonableness. See, e.g., Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, "'viewed as of the time of counsel's conduct.'" (quoting Strickland)); Lisojo v. Rock, 09 Civ. 7928, 2010 WL 1223086, at *32 (S.D.N.Y. Mar. 31, 2010) (holding that on habeas review, defense counsel's performance is evaluated by the state of New York's depraved indifference murder case law at the time of trial), report & rec. adopted, 2010 WL 1783553 (S.D.N.Y. Apr. 29, 2010); Fore v. Ercole, 594 F. Supp. 2d 281, 305 (E.D.N.Y. 2009) ("[T]rial counsel cannot be held to be ineffective when he reasonably relied on the interpretation of New York law regarding depraved indifference murder as it was at the time of petitioner's trial."); Soto v. Conway, 565 F. Supp. 2d 429, 436 (E.D.N.Y. 2008) ("[I]n reviewing counsel's performance for cause, this Court considers not what the law of New York was or is, but rather whether, in light of the case law known to him at the time, counsel's conduct fell below an objective standard of reasonableness.").

Under the law as it existed at the time of petitioner's trial, his trial counsel had no reason to believe that the Feingold standard would apply, and there is no question that the prosecutor's theory and the Court's instructions were proper at the time of trial. Furthermore, as discussed above, even if counsel had anticipated Feingold, the evidence at trial could have supported a

13

finding of either intentional murder or depraved indifference murder because this was a one-on-two, not, as in <u>Feingold</u>, as one-on-one, murder scenario.

### D. Failure to Move to Reopen <u>Wade</u> Hearing Based on Testimony of Eyewitness

Detective Dolan testified at the hearing that the eyewitness, Lee, gave police a physical description of petitioner when they first interviewed him. However, Lee testified at trial that he did not give a physical description of defendant at this first interview. Lee also testified that he was shown a "picture" of petitioner at the second meeting, while the police maintained that Lee was shown a photographic array. Petitioner argues that it was error for trial counsel not to move to reopen the <u>Wade</u> hearing at this point because Lee's testimony that he did not give a physical description at the first meeting, and that he was shown a picture at the second meeting, refuted and impeached Det. Dolan's.

Lee's testimony that he did not give a physical description does contradict Det. Dolan's testimony at the <u>Wade</u> hearing. However, this discrepancy would have had no impact on the <u>Wade</u> hearing if it were reopened, because it does not impact the suggestiveness of the photo array: Detective Dolan testified that he did not remember whether he used the physical description in assembling the photo array. Furthermore, it is a minor inconsistency that does not necessarily indicate that either witness is being dishonest as opposed to misremembering this detail. With respect to the second alleged inconsistency, Lee's testimony that the detectives showed him a picture does not contradict or impeach Det. Dolan's testimony that he showed Lee a photographic array. Lee could have been describing a picture that was part of a photographic array. Even if there were an inconsistency, a failure to reopen the hearing would not constitute deficient performance on the part of trial counsel or create prejudice because, as discussed above, the other indicia of reliability pertaining to Lee's identification were so strong. These claims do

14

not render the state court's holding on ineffective assistance an unreasonable application of Strickland.

## VI. Defective Jury Oaths (Ground Eight of Petition)

N.Y. Crim. Proc. Law § 270.15(1)(a) provides that after twelve prospective jurors are seated in the jury box, they must be immediately sworn in before questioning about their qualifications to serve as jurors. Section 270.15(2) provides that prospective jurors who are not excluded from service during voir dire must retain their place in the jury box and be immediately sworn as trial jurors. Here, the record includes a notation of "jury sworn" at the appropriate times, but does not include the full transcription of the swearing.

The United States Constitution entitles petitioner to a fairly chosen and impartial jury, see Irwin v. Dowd, 366 U.S. 717, 721-22 (1961), but petitioner has not alleged that the jury was substantively defective in any way that would implicate his Sixth Amendment rights. Whether the trial court properly swore in the jurors before voir dire and after they were seated is a question of state law. Even if petitioner showed that a violation of state law occurred, there could be no relief because there is no federal constitutional right implicated by failure to adhere to these statutes. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

This argument of failing to properly swear the jury is currently "making the rounds" among federal habeas petitioners, and I feel compelled to note, and perhaps the Circuit will too, that it stems from a misconception about the custom and practice of court reporters in both federal and state courts. It is frequently the case that court reporters do not transcribe the administration of either juror or witness oaths verbatim. The custom is to simply note on the transcript "oath administered" or "jury sworn" or some other similar indication that the oath has been delivered. That is what was done in this case, and other cases I have seen raising the same

point of error. It does not mean that there was any impropriety in the oath. If there was, it was incumbent on trial counsel to make an objection to the manner in which the oath was administered – that would assuredly be transcribed verbatim – so that it could be corrected. The practice of court reporters in merely noting the administration of the oath rather than transcribing the words of the oath verbatim does not violate any defendant's statutory or constitutional rights. See also Timmons v. Lee, 10-CV-1155, 2010 WL 3813963, at *12 (E.D.N.Y. Sept. 23, 2010) ("[T]here is no requirement in federal law that the oath administered to trial witnesses be transcribed verbatim in the record.")

The Appellate Division's determination that petitioner's claims regarding the failure to properly swear any of the prospective or seated jurors was "without merit" is not contrary to, or an unreasonable application of any clearly established Supreme Court precedent, and as a result, this Court cannot grant habeas relief on this point.

## CONCLUSION

The petition is denied and the case is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. Further, this Court certifies pursuant to 28 USC § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. The Clerk of the Court is directed to enter judgment and mail a copy of this Order to petitioner *pro se*.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
July 8, 2011